**William C. TOLIAFERRO, Plaintiff,**

v.

**Benjamin F. BAILAR, Postmaster General, Defendant.**

**Civ. A. No. 75–2137.**

United States District Court, District of Columbia.

Sept. 15, 1976.

Laura J. Rayburn, Jane W. Lawrence, Washington, D. C., for plaintiff.

David Schlee, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a claim under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* alleging discrimination during employment because of race and a subsequent reprisal by discharge for plaintiff's having complained to the Equal Employment Opportunity Counsellor. Backpay and injunctive relief are sought. The case was tried to the Court following full discovery.

Plaintiff was a full-time distribution clerk sorting mail on the night shift at a postal facility in Prince George's County,

Maryland. He is a black. His employment record from April, 1973, to January 4, 1975, when he was discharged, reflects repeated counselling and numerous disciplinary actions for tardiness, insubordination, failure to report, absence from assigned post and repeated sick leave.

Plaintiff claims he was subjected to unusually harsh, discriminatory discipline because of his race and claims that after a period of on-the-job harassment a false charge, which led to his final discharge, was made because he had complained to EEO Counsellor. The defendant denies these claims, maintaining that plaintiff's conduct required the discipline imposed and that eventual dismissal was proper because plaintiff had threatened the life of a supervising postal official.

The Prince George's postal facility where plaintiff worked operated on a three-shift basis. Plaintiff's assigned hours were from 10:45 p. m. to 7:15 a. m. In 1975 his shift had 50 black and 148 white employees. There were 15 supervisors, four of whom were black. The atmosphere of the facility under the prevailing nighttime working conditions is difficult to convey. Sorting mail presents little challenge and endless routine. Schedules must be adhered to and there are peaks and valleys in mail loads to be processed requiring shifts of personnel, often hour-to-hour, to different locations within the facility. There are many rules and regulations. There is noise, pressure and boring routine. Supervisors maintain strict control.

Plaintiff's work record prior to his discharge revealed mitigating circumstances in some instances where he was disciplined and disagreement between plaintiff and his supervisors as to others. It was established with certainty, however, that he frequently violated rules and regulations governing the conditions of his employment. Prior to his final discharge, a grievance under the labor contract was had and he was restored to full time. Thereafter other violations occurred.

Plaintiff is intelligent, articulate and was potentially an effective worker. He had a running problem with his supervisors because of his conduct and he did not take criticism easily. He has a sharp temper and when confronted with suspected violations he would retort with such comments as "sue me," "I don't work garbage," "do you think this is a plantation," etc. His white supervisors were peppery, ready to use their disciplinary authority when provoked and undoubtedly under considerable continuing tension to keep the work moving night-after-night under trying conditions. Because of plaintiff's spotty record they kept him under close surveillance but this was not because of his race.

Given the situation and personalities, a blow-up was inevitable. On December 4, 1974, plaintiff was absent from his assigned post on the floor without permission. He could not be located for some 25 minutes. When located he was directed to go to the supervisor's office; he refused. There were hot non-racial words back and forth. A guard was called and plaintiff was ordered to leave. Olds, one of his supervisors who had confronted him at the time, was leaving his tour of duty immediately after the event. At almost the same time Olds was leaving, plaintiff left in an angry mood, hastily signing a leave slip. What occurred thereafter is sharply disputed.

Shortly after departing Olds returned to the Post Office visibly disturbed. Olds called a postal inspector and, in a frightened voice, reported that while he was driving home the plaintiff pulled a car along side his truck and threatened to kill him. Plaintiff at all times has denied this occurred. Plaintiff was promptly fired without a hearing or full investigation. After the firing and at trial plaintiff presented circumstantial but inconclusive proof that he went in a different direction than Olds and could not have threatened him en route as claimed. When this discharge went to grievance, the arbitrator after a full hearing sustained the discharge, finding Olds' testimony credible. Plaintiff then on January 13, 1975, grieved to the Civil Service Commission, alleging reprisal and racial discrimination. This suit eventuated when the

Commission failed to act within the statutory 180-day period.

Plaintiff's claim of discrimination for penalties suffered prior to his final discharge fails of proof. It rests primarily, apart from plaintiff's own subjective feelings, upon his claim that whites received less harsh discipline for similar offenses and that generally blacks in the unit were disciplined more frequently and more heavily than whites. Not only were these assertions stoutly denied by supervisors appearing as witnesses, but plaintiff was unable to submit a single specific instance of such inequitable treatment. In addition, stipulated statistics covering discipline in its many different aspects failed to show any disproportionate treatment. Even when examined pointedly for the discipline of blacks attributable to white supervisors, there was no significant statistical disparity between blacks and whites respecting discipline.

It is notable here that each of the disciplinary actions of which plaintiff complains was contemporaneously documented, that plaintiff had continuing access to his union representatives and that plaintiff himself was forced to concede that in many cases a violation occurred and reasons advanced for discipline were not pretextual.

There remains the question whether plaintiff has established that his final discharge was an act of reprisal. Testimony from white and black supervisors present at the time established that plaintiff's conduct justified his being ordered to leave the premises. His flat refusal to go to the supervisor's office for discussion of his absence from the floor, and his loud and uncontrollable action when confronted by supervisors gave adequate cause for calling for his immediate removal from the floor. The incident involved no racial slurs, and was not attributable to his race or EEO complaint. It is not necessary for the Court to determine whether or not plaintiff thereafter threatened to kill his supervisor. Giving weight to the arbitrator's report, which is in evidence, and considering other elements of the proof, this incident probably occurred. However, even had Olds exaggerated or misrepresented the incident, there is no evidence, and no inference can be drawn, that such an act or the subsequent discharge was for racial reasons or in reprisal for plaintiff's earlier claims alleging discrimination.

The United States District Court for the District of Columbia must frequently review personnel actions within the federal agencies. Many complaints, and the Court believes this is one, are brought by plaintiffs who have a genuine belief that their failure to make the grade in Government service is directly attributable to their race, their sex, or their age. Often these subjective feelings are strongly asserted but a finding of discrimination requires proof, either direct or circumstantial. While the burden of going forward shifts to defendants in cases of this type after a limited and often uncertain showing, the ultimate burden of proof rests upon plaintiff. It is not enough for plaintiff to show that he is black and that he was frequently disciplined and ultimately discharged. There were legitimate grounds for these actions. Plaintiff has failed to meet the test laid down in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for the record wholly fails to show that the various personnel actions were singly or together a pretext for race discrimination or taken in reprisal.

Judgment for defendant and the complaint is dismissed. No costs to either party.

The foregoing constitutes the Court's findings of fact and conclusions of law.